**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

EMILY R. ANDERSON, an individual; and JASON ANDERSON, an individual,

Plaintiffs,

vs.

WYETH LLC, a Limited Liability Company; PFIZER INC., a Corporation; and DOES 1 through 100, inclusive,

Defendants.

Case No. 1:25-cv-02217-CM

**ORAL ARGUMENT REQUESTED**

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS AND STRIKE PLAINTIFFS' COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................ 1

BACKGROUND ........................................................ 2

I. REGULATORY HISTORY OF DIET DRUGS ........................................ 2

II. THIS LITIGATION ........................................................ 3

ARGUMENT ........................................................ 3

I. OHIO LAW GOVERNS PLAINTIFFS' CLAIMS ........................................ 3

II. PLAINTIFFS' CLAIMS ARE ABROGATED BY THE OHIO PRODUCT LIABILITY ACT ........................................ 5

III. THE LOSS OF CONSORTIUM CLAIM FAILS WITH PLAINTIFFS' OTHER CLAIMS ........................................ 8

IV. PLAINTIFFS' DEMAND FOR PUNITIVE DAMAGES IS BARRED BY OHIO LAW ........................................ 8

CONCLUSION ........................................................ 9

CERTIFICATE OF SERVICE ........................................................ 11

CERTIFICATE OF COMPLIANCE ........................................................ 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aaron v. Medtronic, Inc.*,
209 F.Supp.3d 994 (S.D. Ohio 2016) ....................6

*Barnett v. Johnson*,
839 F.Supp. 236 (S.D.N.Y. 1993) ....................3, 4

*Boroff v. ALZA Corp.*,
685 F.Supp.2d 704 (N.D. Ohio 2010)....................5, 6

*Bossetti v. Allergan Sales, LLC*,
No. 1:22-CV-523, 2023 WL 4030681 (S.D. Ohio June 15, 2023)....................8, 9

*Buckman Co. v. Pls.' Legal Comm.*,
531 U.S. 341 (2001)....................9

*Curley v. AMR Corp.*,
153 F.3d 5 (2d Cir. 1998)....................3

*Decker v. GE Healthcare Inc.*,
770 F.3d 378 (6th Cir. 2014) ....................9

*Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc.*,
414 F.3d 325 (2d Cir. 2005)....................4

*First Hill Partners, LLC v. BlueCrest Cap. Mgmt. Ltd.*,
52 F.Supp.3d 625 (S.D.N.Y. 2014) ....................3, 4

*Fuller v. Colgate-Palmolive Co.*,
No. 24-CV-4225 (RA), 2025 WL 588118 (S.D.N.Y. Feb. 24, 2025) ....................5

*In re Gadolinium-Based Contrast Agents Prods. Liab. Litig.*,
No. 1:08 GD 50000, 2013 WL 587655 (N.D. Ohio Feb. 13, 2013) ....................9

*Gordon v. B. Braun Med. Inc.*,
No. 1:19-CV-121, 2020 WL 1491378 (S.D. Ohio Mar. 27, 2020)....................4, 5, 7

*Graham v. Am. Cyanid Co.*,
350 F.3d 496 (6th Cir. 2003) ....................8

*Hendricks v. Pharmacia Corp.*,
No. 2:12-cv-613, 2014 WL 4961550 (S.D. Ohio Oct. 2, 2014) ....................7

*Hendricks v. Pharmacia Corp.*,
No. 2:12-cv-613, 2014 WL 2515478 (S.D. Ohio June 4, 2014)....7

*Hepburn v. Bos. Sci. Corp.*,
No. 3:17-CV-00530-DCN, 2018 WL 2275219 (D. Idaho May 17, 2018)....4

*Johnson v. Eisai, Inc.*,
590 F.Supp.3d 1053 (N.D. Ohio 2022)....1, 9

*Johnson v. Eli Lilly & Co.*,
No. 1:14cv453, 2015 WL 1120009 (S.D. Ohio Mar. 12, 2015)....7

*Kennedy v. Depuy Orthopaedics, Inc.*,
No. 1:14CV25, 2015 WL 1062745 (S.D. Ohio Mar. 9, 2015)....6

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
313 U.S. 487 (1941)....3

*Luthman v. Minster Supply Co.*,
2008 Ohio 165 (Ct. App. 2008)....7

*Mitchell v. Proctor & Gamble*,
No. 2:09-CV-426, 2010 WL 728222 (S.D. Ohio Mar. 1, 2010)....6

*Monroe v. Novartis Pharms. Corp.*,
29 F.Supp.3d 1115 (S.D. Ohio 2014)....8, 9

*In re Rezulin Prods. Liab. Litig.*,
210 F.R.D. 61 (S.D.N.Y. 2002)....4

*Rice v. Kawasaki Heavy Indus., Ltd.*,
No. CV-07-4031(SJF)(ARL), 2008 WL 4646184 (E.D.N.Y. Oct. 17, 2008)....4

*Rife v. Matrixx Initiatives, Inc.*,
No. 2:06-CV-267, 2007 WL 1831064 (S.D. Ohio June 25, 2007)....8

*Saraney v. TAP Pharm. Prods., Inc.*,
No. 1:04 CV 02026, 2007 WL 148845 (N.D. Ohio Jan. 16, 2007)....6, 8

*Shawver v. Zimmer Biomet Spine, Inc.*,
No. 3:24-CV-00454-JGC, 2024 WL 4458261 (N.D. Ohio Oct. 10, 2024)....7

*Stratford v. SmithKline Beecham Corp.*,
No. 2:07-CV-639, 2008 WL 2491965 (S.D. Ohio June 17, 2008)....5, 7

*Summers v. Abbott Lab'ys*,
No. 10-CV-4247(ENV)(JMA), 2013 WL 125730 (E.D.N.Y. Jan. 9, 2013)....5

*Tolliver v. Bristol-Myers Squibb Co.*,
No. 1:12 CV 00754, 2012 WL 3074538 (N.D. Ohio July 30, 2012)................................1, 5, 6

*Wimbush v. Wyeth*,
619 F.3d 632 (6th Cir. 2010) ..................................................................................5

**Statutes**

Ohio Rev. Code
§ 2307.71(A)(13) ..................................................................................5
§ 2307.71(B) ..................................................................................1, 4, 5
§ 2307.74..................................................................................5
§ 2307.75..................................................................................5
§ 2307.76..................................................................................5
§ 2307.77..................................................................................5
§ 2307.80(C)(1)..................................................................................9
§ 2307.80(C)(1)(a) ..................................................................................8

**Other Authorities**

Ctr. Disease Control, *Cardiac Valvulopathy Associated with Exposure to Fenfluramine or Dexfenfluramine: U.S. Department of Health and Human Services Interim Public Health Recommendations*, Morbidity & Mortality Weekly Rpt., Nov. 14, 1997,
www.cdc.gov/mmwr/preview/mmwrhtml/00049815.htm..................................................2

## INTRODUCTION

In this product liability action, Plaintiffs Emily and James Anderson allege that Ms. Anderson's use of the prescription drugs Pondimin and/or Redux ("diet drugs") in Westerville, Ohio in the 1990s caused her to develop a rare lung disease more than twenty-five years later. The Complaint asserts common law causes of actions for strict liability – failure to warn, negligence, breach of implied warranty, breach of express warranty, negligent misrepresentation/concealment, fraud/fraudulent concealment, and loss of consortium. Each of these claims must be dismissed.

***First***, the Ohio Product Liability Act ("OPLA"), Ohio Rev. Code § 2307.71(B), abrogates the strict liability, negligence, warranty, and fraud-based claims. Because Ms. Anderson allegedly received and ingested diet drugs in Ohio, the substantive law of Ohio applies. The OPLA provides the exclusive remedy for product liability claims in Ohio, and common law product claims must be dismissed if not pleaded under the statute. *See, e.g.*, *Tolliver v. Bristol-Myers Squibb Co.*, No. 1:12 CV 00754, 2012 WL 3074538, at *2 (N.D. Ohio July 30, 2012). The OPLA, moreover, does not recognize a claim for breach of implied warranty, negligent misrepresentation, or fraud. These claims cannot be repleaded under the OPLA and must be dismissed with prejudice.

***Second***, the Court must dismiss the loss of consortium claim. A loss of consortium claim is a derivative action. Because all of Plaintiffs' substantive claims fail, so does the consortium claim.

***Third***, the Court should strike Plaintiffs' demand for punitive damages. Ohio law does not permit punitive damages for claims involving an FDA-approved drug absent a finding of fraud by the FDA. *See Johnson v. Eisai, Inc.*, 590 F.Supp.3d 1053, 1067 (N.D. Ohio 2022). Plaintiffs have alleged no such finding by the FDA nor could they.

## BACKGROUND

### I. REGULATORY HISTORY OF DIET DRUGS

Pondimin (fenfluramine) and Redux (dexfenfluramine) are prescription weight loss drugs commonly referred to as "diet drugs." Compl. ¶¶ 7, 8 [ECF No. 1]. The FDA approved Pondimin in 1973 and approved Redux in April 1996. *Id.* ¶ 47. In August 1996, independent researchers published the International Primary Pulmonary Hypertension Study ("IPPHS"). *Id.* ¶ 124. The IPPHS was the first case-controlled study to associate diet drug use with an increased risk of primary pulmonary hypertension ("PPH"). *Id.* ¶ 16. PPH is a rare lung disease with an incidence rate in the general population of "1–2 cases per 1,000,000 persons." *Id.* ¶ 136 (quoting the 1997 Redux label).

The Pondimin and Redux labels, like all drug labels, have changed over time. As relevant here, the initial Redux label in April 1996 warned about the "risk of developing primary pulmonary hypertension"—the very injury that Ms. Anderson alleges—and included preliminary data from the forthcoming IPPHS about that risk. *Id.* ¶ 146. In November 1996, the Pondimin and Redux labels were updated to incorporate the final IPPHS results. *Id.* ¶¶ 116, 143, 146. And in early September 1997, the FDA moved this PPH information into a boxed warning. *Id.* ¶¶ 134–135.

On September 15, 1997, Defendants voluntarily withdrew the drugs from the U.S. market after reports linked Pondimin and Redux to valvular heart disease (not PPH). *Id.* ¶ 138.[1]

[1] Although not material to this Motion, the Complaint wrongly suggests that the market withdrawal was due to PPH concerns. *Compare* Compl. ¶ 9, *with* Ctr. Disease Control, *Cardiac Valvulopathy Associated with Exposure to Fenfluramine or Dexfenfluramine: U.S. Department of Health and Human Services Interim Public Health Recommendations*, Morbidity & Mortality Weekly Rpt., Nov. 14, 1997, www.cdc.gov/mmwr/preview/mmwrhtml/00049815.htm.

## II. THIS LITIGATION

On March 18, 2025, Plaintiffs filed this product liability lawsuit. *See generally* Compl. The Complaint alleges that Dr. Ian J. Wilson prescribed Pondimin and/or Redux to Ms. Anderson —along with phentermine, a weight loss drug manufactured by other companies—in Westerville, Ohio in "August 1996 for a period of six months." *Id.* ¶¶ 40–41. Plaintiffs further claim that Ms. Anderson "restarted later in 1997" and continued to take diet drugs until "September 1997 when [the drugs were] taken off the market." *Id.* ¶ 41. As a result of this diet drug use, Ms. Anderson allegedly developed PPH twenty-six years later in May 2023. *Id.* ¶ 42.

The main thrust of the Complaint is that Defendants failed to adequately warn about the risk of PPH. *See, e.g.*, *id.* ¶¶ 6, 149. Plaintiffs bring seven causes of action against Defendants: (1) strict liability – failure to warn, (2) negligence, (3) breach of implied warranty, (4) breach of express warranty, (5) negligent misrepresentation, (6) fraud/fraudulent concealment, and (7) loss of consortium. Plaintiffs seek both compensatory and punitive damages. *See, e.g.*, *id.* at Prayer for Relief (p. 74).

# ARGUMENT

## I. OHIO LAW GOVERNS PLAINTIFFS' CLAIMS

A federal court sitting in diversity applies the substantive law of the forum state, including its choice of law principles. *Barnett v. Johnson*, 839 F.Supp. 236, 242 (S.D.N.Y. 1993) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 498 (1941)). In conducting a choice-of-law analysis, the first step is to determine "'whether there is an actual conflict of laws.'" *First Hill Partners, LLC v. BlueCrest Cap. Mgmt. Ltd.*, 52 F.Supp.3d 625, 632 (S.D.N.Y. 2014) (quoting *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998)). There is an actual conflict if "the applicable law from each jurisdiction provides different substantive rules and those differences are relevant to the issue at hand[ ] and . . . have a significant possible effect on the outcome of the trial." *Id.*

(quoting *Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 331–32 (2d Cir. 2005)). If there is an actual conflict, the Court must determine which state has the greatest interest in having its laws applied. *Id.* at 635–36.

Here, there is an actual conflict between the substantive laws of Ohio (where Ms. Anderson allegedly was prescribed diet drugs), Idaho (where Ms. Anderson currently resides), and the forum state of New York. Ohio law abrogates common law product liability claims and provides exclusive relief through the OPLA, thus limiting Plaintiffs to specifically defined causes of action under the statute. *See Gordon v. B. Braun Med. Inc.*, No. 1:19-CV-121, 2020 WL 1491378, at *3 (S.D. Ohio Mar. 27, 2020) (quoting Ohio Rev. Code § 2307.71(B)); *see infra* pp. 5–8. By contrast, Idaho and New York have no such statutory scheme and allow common law product liability claims to proceed. *See, e.g.*, *Rice v. Kawasaki Heavy Indus., Ltd.*, No. CV-07-4031(SJF)(ARL), 2008 WL 4646184, at *4 (E.D.N.Y. Oct. 17, 2008) (finding an actual conflict between New York law, which allows common law product liability claims, and New Jersey law, which has a product liability statute that subsumes common law claims into one statutory cause of action); *Hepburn v. Bos. Sci. Corp.*, No. 3:17-CV-00530-DCN, 2018 WL 2275219, at *6 (D. Idaho May 17, 2018) (analyzing various common law claims in product liability action under Idaho law, including strict liability, negligence, and fraud).

Because there is an actual conflict between the substantive laws of Ohio, Idaho, and New York, the Court must determine which state has the greatest interest in having its laws applied. For claims sounding in tort, "a New York court generally will select the law of the state in which the tort was committed as the applicable law." *Barnett*, 839 F.Supp. at 242. For example, in cases involving allegedly defective prescription medications, New York courts routinely apply the law "where the drug was ingested." *In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. 61, 70 n.57 (S.D.N.Y.

2002) (collecting cases); *Summers v. Abbott Lab'ys*, No. 10-CV-4247(ENV)(JMA), 2013 WL 125730, at *3 (E.D.N.Y. Jan. 9, 2013). Here, because Ms. Anderson allegedly ingested diet drugs in Ohio, *see* Compl. ¶ 40, this Court should apply Ohio substantive law.

## II. PLAINTIFFS' CLAIMS ARE ABROGATED BY THE OHIO PRODUCT LIABILITY ACT

Plaintiffs' strict liability, negligence, warranty, and fraud-based claims all sound in product liability and are governed by the OPLA, which "expressly 'abrogates *all common law* product liability claims or causes of action.'" *Gordon*, 2020 WL 1491378, at *3 (quoting Ohio Rev. Code § 2307.71(B)) (emphasis in original); *Wimbush v. Wyeth*, 619 F.3d 632, 639 (6th Cir. 2010) (the OPLA "explicitly eliminate[s] 'all common law product liability claims or causes of action'" (citation omitted)); *see also Fuller v. Colgate-Palmolive Co.*, No. 24-CV-4225 (RA), 2025 WL 588118, at *2 (S.D.N.Y. Feb. 24, 2025) (applying the OPLA to product liability claims).

The OPLA governs claims "'that seek[] to recover compensatory damages from a manufacturer or supplier for death, physical injury to person, emotional distress . . .' allegedly resulting from a manufacturing or design defect, inadequate warning, or nonconformance with manufacturer representations." *Tolliver*, 2012 WL 3074538, at *2 (quoting Ohio Rev. Code § 2307.71(A)(13)). The OPLA allows only four types of claims: manufacturing defect, design defect, inadequate warning, and noncompliance with manufacturers' representations. *Id.* at 3 (citing Ohio Rev. Code §§ 2307.71(B), 2307.74–2307.77). When pleading a claim under the OPLA, courts have explained the complaint must make "reference to the applicable provision of the OPLA." *Stratford v. SmithKline Beecham Corp.*, No. 2:07-CV-639, 2008 WL 2491965, at *5 (S.D. Ohio June 17, 2008); *see also Boroff v. ALZA Corp.*, 685 F.Supp.2d 704, 709 (N.D. Ohio 2010) (same); *Tolliver*, 2012 WL 3074538, at *3 ("When bringing claims under the OPLA, plaintiffs should clarify which OPLA provision governs the claims in their complaint.").

***Strict liability – failure to warn (Count I), negligence (Count II), and breach of express warranty (Count IV)***. The Court should dismiss these claims—which are all premised on Defendants' purported failure-to-warn and fall within the purview of the OPLA—as abrogated by the statute. *See* Compl. ¶¶ 173, 192 (alleging in Counts I and III that "[t]he aforesaid products were unaccompanied by warnings of their dangerous propensities"); *id.* ¶ 182 (alleging in Count II that Defendants "negligently and carelessly . . . provided (or failed to provide) warnings for the use of the aforesaid products, such that they were dangerous and unsafe"); *id.* ¶ 205 (alleging in Count IV that the "diet pill product was not accompanied by warnings . . . [about] the risk of PPH").

Because the OPLA is the exclusive remedy for these claims, "any product liability claim not brought under the OPLA [is] subject to dismissal." *Aaron v. Medtronic, Inc.*, 209 F.Supp.3d 994, 1011 (S.D. Ohio 2016); *Tolliver*, 2012 WL 3074538, at *2 ("[T]he OPLA abrogates Plaintiffs' common law claims of negligence, negligence per se, and breach of warranty."); *Boroff*, 685 F.Supp.2d at 711 (the OPLA abrogates common law claims of breach of express warranty, negligence, and negligence per se); *Mitchell v. Proctor & Gamble*, No. 2:09-CV-426, 2010 WL 728222, at *3 (S.D. Ohio Mar. 1, 2010) ("The OPLA has been held to abrogate claims for strict products liability, negligent failure to warn, breach of express warranty, and breach of implied warranty." (collecting cases)); *Kennedy v. Depuy Orthopaedics, Inc.*, No. 1:14CV25, 2015 WL 1062745, at *1 (S.D. Ohio Mar. 9, 2015) (dismissing claims for negligence, breach of warranty, strict liability, and failure to warn as abrogated by the OPLA); *Saraney v. TAP Pharm. Prods., Inc.*, No. 1:04 CV 02026, 2007 WL 148845, at *9 (N.D. Ohio Jan. 16, 2007) ("[T]he OPLA displaces the [plaintiffs'] negligence claim and it must be pled pursuant to the statute.").

***Breach of implied warranty (Count III), negligent misrepresentation/concealment (Count V), and fraud/fraudulent concealment (Count VI)***. These claims should be dismissed with prejudice, because they do not fall under any of the statutorily authorized product liability claims in the OPLA. For example, in *Stratford*, the court dismissed the breach of implied warranty claim with prejudice because "the OPLA sets forth those products liability claims which may be made against a manufacturer and none of the statutorily recognized claims includes an implied warranty claim." 2008 WL 2491965, at *7; *see also id.* ("The 'OPLA has preempted the implied warranty of merchantability and the implied warranty of fitness for a particular purpose.'" (quoting *Luthman v. Minster Supply Co.*, 2008 Ohio 165 (Ct. App. 2008)).

The fraud-based claims, too, must be dismissed with prejudice because "the OPLA [] abrogate[s] fraud claims arising from a duty to warn." *Hendricks v. Pharmacia Corp.*, No. 2:12-cv-613, 2014 WL 2515478, at *4 (S.D. Ohio June 4, 2014) (internal quotation marks and citation omitted), *rep. & rec. adopted*, 2014 WL 4961550 (S.D. Ohio Oct. 2, 2014); *Stratford*, 2008 WL 2491965, at *8 (allegations of fraudulent omissions were "essentially allegations that [the defendant] failed to properly warn consumers of the risk" of the drug at issue and were abrogated); *Shawver v. Zimmer Biomet Spine, Inc.*, No. 3:24-CV-00454-JGC, 2024 WL 4458261, at *5 (N.D. Ohio Oct. 10, 2024) (dismissing with prejudice fraud claims that sounded failure to warn, omission, and concealment); *Gordon*, 2020 WL 1491378, at *10 ("Plaintiff's negligent misrepresentation claim is precluded by OPLA."); *Johnson v. Eli Lilly & Co.*, No. 1:14cv453, 2015 WL 1120009, at *2 (S.D. Ohio Mar. 12, 2015) (dismissing fraud claims "based on a theory of omission and concealment"). Here, Plaintiffs' negligent misrepresentation and fraud claims are premised on a failure to warn. They allege that "Defendants had an absolute duty to disclose the true facts known to them regarding the safety of their products, Pondimin and/or Redux, and the

combined use of these diet pills with Phentermine." Compl. ¶¶ 210, 219. As such, these claims are abrogated by the OPLA and must be dismissed with prejudice.

## III. THE LOSS OF CONSORTIUM CLAIM FAILS WITH PLAINTIFFS' OTHER CLAIMS

Under Ohio law, loss of consortium is a derivative claim. *See Rife v. Matrixx Initiatives, Inc.*, No. 2:06-CV-267, 2007 WL 1831064, at *1 (S.D. Ohio June 25, 2007). Because Plaintiffs' underlying claims all fail as a matter of law, so too does the claim for loss of consortium (Count VII). *See Graham v. Am. Cyanid Co.*, 350 F.3d 496, 514–15 (6th Cir. 2003) ("A derivative cause of action may not provide greater relief than that available under the primary cause of action."); *Saraney*, 2007 WL 148845, at *9 ("[T]he derivative [loss of consortium] claim may be maintained for only so long as the primary claim continues.").

## IV. PLAINTIFFS' DEMAND FOR PUNITIVE DAMAGES IS BARRED BY OHIO LAW

The Court should strike Plaintiffs' request for punitive damages, *see* Compl. at 74 (Prayer for Relief), because Ohio law does not permit punitive damages in cases involving an FDA-approved medication absent a finding—by the agency—of fraud. *Monroe v. Novartis Pharms. Corp.*, 29 F.Supp.3d 1115, 1130 (S.D. Ohio 2014). The Complaint makes no such allegations here, nor could it.

Under the OPLA, punitive damages are generally not permitted against a drug manufacturer if that drug was "manufactured and labeled . . . in accordance with the terms of an approval" issued by FDA. Ohio Rev. Code § 2307.80(C)(1)(a). The statute provides "a narrow exception" if the plaintiff can show that the manufacturer fraudulently withheld from or misrepresented to the FDA information material and relevant to the plaintiff's harm. *Bossetti v. Allergan Sales, LLC*, No. 1:22-CV-523, 2023 WL 4030681, at *7 (S.D. Ohio June 15, 2023) (citing Ohio Rev. Code § 2307.80(C)(1)). But because "the Supreme Court has held that federal law

largely preempts such 'state-law fraud-on-the-FDA claims,'" *id.* (quoting *Buckman Co. v. Pls.' Legal Comm.*, 531 U.S. 341, 348–49 (2001)), "a punitive-damages claim for an FDA-approved drug is allowed under Ohio law ***only if*** the FDA has made a finding of either fraud or misrepresentation." *Monroe*, 29 F.Supp.3d at 1130 (emphasis added).

Here, diet drugs are FDA-approved prescriptions drugs. Compl. ¶ 47. To sustain a claim for punitive damages, then, Plaintiffs must show that the FDA has "already discovered that [Defendants] made a fraudulent representation about [fenfluramine or dexfenfluramine]" to the FDA. *Bossetti*, 2023 WL 4030681, at *7; *In re Gadolinium-Based Contrast Agents Prods. Liab. Litig.*, No. 1:08 GD 50000, 2013 WL 587655, at *14 (N.D. Ohio Feb. 13, 2013) ("[A]s the Ohio statutory scheme makes clear, Plaintiffs *must* prove fraud on the FDA or misrepresentation to the FDA in order to recover punitive damages—which, of course, they can't do absent an FDA finding of fraud or misrepresentation." (emphasis in original)), *aff'd sub nom. Decker v. GE Healthcare Inc.*, 770 F.3d 378 (6th Cir. 2014). Plaintiffs, however, do not and cannot allege that the FDA made a finding of fraud with respect to diet drugs. Their allegations that Defendants withheld information from the FDA are insufficient to overcome this hurdle. *See Johnson v. Eisai, Inc.*, 590 F.Supp.3d 1053, 1067 (N.D. Ohio 2022) (plaintiffs' allegations that defendant "knew of several dangers and risk that they failed to represent to the FDA" was insufficient to allow for punitive damages). Accordingly, the Court should strike Plaintiffs' punitive damages demand.

**CONCLUSION**

For the foregoing reasons, the Court should grant Defendants' motion to dismiss.

Dated: May 14, 2025

/s/ Sharon D. Mayo
Jeffrey Horowitz
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
Phone: (212) 836-8000
jeffrey.horowitz@arnoldporter.com

Sharon D. Mayo (*pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111
Phone: (415) 471-3100
sharon.mayo@arnoldporter.com

Kevin A. Cline (*pro hac vice*)
Anna K. Thompson (*pro hac vice*)
Angelique A. Ciliberti (*pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue NW
Washington, DC 20001
Phone: (202) 942-5000
kevin.cline@arnoldporter.com
anna.thompson@arnoldporter.com
angelique.ciliberti@arnoldporter.com

*Attorneys for Wyeth LLC and Pfizer Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 14, 2025, I electronically filed the foregoing **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS AND STRIKE PLAINTIFFS' COMPLAINT** with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record, according to the Court's Electronic Mail Notice List.

*/s/ Sharon D. Mayo*
Sharon D. Mayo

**CERTIFICATE OF COMPLIANCE**

I hereby certify pursuant to Local Rule 7.1(c), that this memorandum contains 2,779 words, exclusive of the cover page, table of contents, table of authorities, signature blocks, and certificates

*/s/ Sharon D. Mayo*
Sharon D. Mayo