UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

EMILY R. ANDERSON, an individual, and
JASON ANDERSON, an individual,

        Plaintiffs,

-against-                                     25-cv-2217 (CM)

WYETH LLC, a Limited Liability
Company. PFIZER INC., a Corporation,
and DOES 1 through 100, inclusive,

        Defendants.

------------------------------------------------------------X

**DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

McMahon, J.:

        Plaintiff Emily Anderson took diet drugs in 1996 – when, by my calculation, she was a teenager.[1] Specifically, her physician, Dr. Ian J. Wilson, prescribed for her the combination of Fenfluramine (or Dexfenfluramine) and Phenteremine – commonly known as "Fen-Phen" – which she took for approximately six months. Emily lived in Westerville, Ohio, a suburb of Columbus, while using Fen-Phen. She was both prescribed and ingested the drugs in Ohio.

        Fenfluramine (Pondimum) and Dexfenfluramine (Redux) – the "Fen" half of Fen-Phen – were withdrawn from the market in 1997 by their manufacturer, American Home Products Corp. The complaint alleges that the drugs were withdrawn due to concerns about the combination of Fenfluramine or Dexfenfluramine with Phentermine, which caused primary pulmonary hypertension, a rare and serious lung disease (Complaint ¶ 9). Defendants dispute this, asserting instead that the withdrawal was due to reports linking Fenfluramine and Dexfenfluramine to

---

[1] The complaint, filed in 2025, pleads that Anderson is presently 46 years old (Complaint ¶ 4). That would make her 18 years old in 1996.

valvular heart disease (*see* Complaint ¶ 138; Dkt. #29 at n.1). As defendants acknowledge, however, the reason for the withdrawal is not germane to the present motion.

A multi-district litigation involving thousands of individuals who had been prescribed Fen-Phen prior to its withdrawal from the market was settled in the year 2000. *Brown v. Am. Home Prods. Corp. (In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.)*, No. 99-20593, 2000 U.S. Dist. LEXIS 12275, at *48 (E.D. Pa. Aug. 28, 2000) ("*Fen-Phen MDL Settlement*"). Pursuant to that settlement, five discrete subclasses of individuals who took Pondimin and Redux and their associated consortium claimants were entitled to varying levels of medical monitoring, medical screening, and matrix compensation benefits. *Id.* at 55–65.

Today, almost 30 years later, Mrs. Anderson – who has contracted Primary Pulmonary Hypertension – sues Wyeth LLC (formerly American Home Products) and Pfizer Inc., the company that acquired Wyeth in 2009, seeking damages for the medical condition allegedly caused by her use of this dangerous pharmaceutical combination. Wyeth LLC and Pfizer have moved to dismiss the complaint on multiple technical grounds, all of which have merit.

The court grants the motion with leave to replead as noted.

**The Complaint**

The complaint in this action pleads seven causes of action, all of which arise under state common law principles: (1) strict liability – failure to warn; (2) negligence; (3) breach of implied warranty; (4) breach of express warranty; (5) negligent misrepresentation; (6) fraud/fraudulent concealment; and (7) loss of consortium (the plaintiff on that claim being Emily's husband, Jason Anderson).

There is complete diversity. Plaintiffs are citizens of Idaho. Defendant Pfizer Inc. is incorporated in Delaware with its principal place of business in New York. The citizenship of defendant Wyeth LLC is not properly pleaded in the complaint. An LLC is a citizen of every state in which any of its members is a citizen. However, in accordance with this court's rules, Defendants have filed a Rule 7.1 Statement of Corporate Ownership, which reveals that the sole member of Wyeth LLC is Pfizer, Inc. Dkt. #30. Therefore, Wyeth LLC is also a citizen of Delaware and New York. And since its headquarters are presently located in Madison, New Jersey, it is a citizen of New Jersey as well.[2]

**Choice of Law**

A federal court sitting in diversity applies the substantive law of the forum state (in this case, New York) – including its choice of law principles. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–497 (1941).

When conducting a choice of law analysis, the first step is to determine whether there is an actual conflict of laws issue to resolve. *Curley v. AMR Corp.*, 153 F. 3d 5, 12 (2d Cir. 1998). There is an actual conflict if "the applicable law from each jurisdiction provides different substantive rules and those differences are relevant to the issue at hand[ ] and . . . have a significant *possible* effect on the outcome of the trial." *First Hill Partners, LLC v. BlueCrest Cap. Mgmt. Ltd.*, 52 F. Supp. 3d 625, 632 (S.D.N.Y. 2014) (citation omitted); *Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F. 3d 325, 331–32 (2d Cir. 2025). If there is an actual conflict of laws, then the court must determine which state has the greatest interest in having its laws applied. *See GlobalNet Financial.Com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 384–85 (2d Cir. 2006).

---

[2] The location of Wyeth's headquarters in 1996 is not relevant for purposes of ascertaining diversity of citizenship as of the date the complaint in this action was filed. However, it appears that American Home Products has relocated its headquarters from New York to New Jersey by 1996.

3

There is an actual conflict among the laws of the four states that could possibly govern here – Ohio (where the tortious acts occurred), Idaho (where the plaintiffs currently reside), New York (where both corporate defendants are citizens and where this lawsuit was brought) and New Jersey (where Wyeth LLC's principal place of business is currently located).

The Ohio Legislature passed a statute, The Ohio Products Liability Act, Ohio Rev. Code §2307.71(B), which governs liability under Ohio law in all products liability cases – of which this lawsuit is indisputably one. Pursuant to the OLPA all common law product liability claims are abrogated; product liability is limited to specifically defined causes of action under the statute, which is the exclusive source for relief in a products liability case governed by Ohio law. There are four such causes of action: manufacturing defect, design defect, inadequate warning, noncompliance with manufacturers' representations.

New Jersey also has a products liability statute, N.J. Stat. SS 2A:58C-1 *et. seq*. Unlike the Ohio statute, it subsumes all common law claims into one statutory cause of action. *See Repola v. Morbark Indus., Inc.*, 934 F.2d 483, 492 (3d Cir. 1991).

New York and Idaho do not have similar statutory products liability schemes. Both states allow plaintiffs to assert common law product liability claims.

Since there is an actual conflict among the laws of the states concerned, and since the plaintiffs' claims sound in tort, "a New York court generally will select the law of the state in which the tort was committed as the applicable law." *Barnett v. Johnson*, 839 F. Supp. 236, 242 (S.D.N.Y. 1993). In cases involving allegedly defective prescription medications, New York courts routinely apply the law of the place "where the drug was ingested." *In re Rezulin Prods. Liab. Litig.* 210 F.R.D. 61, 70 n. 57 (S.D.N.Y. 2002) (collecting cases); *Summers v. Abbott Labs*, 2013 WL 125730, at *3 (E.D.N.Y. Jan. 9, 2013). It is undisputed that Plaintiff Emily Anderson lived in Ohio when

4

she was prescribed Fen-Phen; that it was prescribed by a physician practicing medicine in Ohio; and that Emily ingested the drug in Ohio. Compl. ¶40. Therefore, applying standard New York choice of law principles, Ohio's substantive law governs.

**The Motion to Dismiss**

Plaintiffs' claims in strict liability, negligence, warrant and fraud are all products liability claims. They are, therefore, abrogated by the OPLA. Counts I, II, V and VI must, therefore, be dismissed.

The OPLA governs any and all claims "'that seek to recover compensatory damages from a manufacturer or supplier for death, physical injury to person, emotional distress...' allegedly resulting from a manufacturing or design defect, inadequate warning, or nonconformance with manufacturer representations." *Tolliver v. Bristol-Myers Squibb Co.*, No. 1:12 CV 00754, 2012 WL 3074538, at *2 (N.D. Ohio July 30, 2012) (quoting Ohio Rev. Code §2307.17(A)(13)). Emily has asserted three separate common law claims that are subsumed by the OLPA's statutory cause of action for inadequate warning: strict liability-failure to warn (Count I – "the aforesaid products were unaccompanied by warning of their dangerous propensities," Complaint, ¶173), negligence (for failure to provide warnings that the products were dangerous and unsafe, Complaint, ¶182) and breach of express warranty (Count IV – the diet pill product was not accompanied by warnings...[about] the risk of [Primary Pulmonary Hypertension ¶205)). All of those claims must be dismissed as preempted by the OPLA, because that statute provides the exclusive remedy for failure to warn or inadequate warning. *See Mitchell v. Proctor & Gamble,* 2010 WL 728222, at *3 (S.D. Ohio March 1, 2010) ("The OPLA has been held to abrogate claims for strict products liability, negligent failure to warn, breach of express warranty and breach of implied warranty."); *Kennedy v. Depuy Orthopaedics, Inc.*, 2015 WL 1062745 at *1 (S.D. Ohio Mar. 9, 2015) (same).

5

Emily recognizes the fact of preemption/abrogation, but insists that there is no need to dismiss her improperly pleaded common law claims for relief, on the theory that liberal federal notice pleading requirements allow one to infer from the facts pleaded that the plaintiff has a failure to warn claim of the sort cognizable under the OPLA. However, Ohio courts – including Ohio's federal courts – have held that a complaint pleading a claim pursuant to the OPLA must in fact make reference to the applicable provision of the OPLA. *Stratford v. SmithKline Beecham Corp.*, 2008 WL 2491965, at *5 (S.D. Ohio June 17, 2008); *see also Tolliver*, 2012 WL 3074538, at *3 ("When bringing claims under the OPLA, plaintiffs should clarify which OPLA provision governs the claims in their complaint."). There is no prejudice to requiring plaintiff to replead her failure to warn claims in a statutorily compliant manner, as Counts I, III and IV will be dismissed without prejudice and with leave to replead in a statutorily compliant manner.

The other three claims pleaded by Emily in her complaint must be dismissed because the OPLA – which provides the exclusive remedy for the type of injury allegedly suffered by Plaintiff – does not recognize any such claims. Courts routinely dismiss claims in breach of implied warranty (Count III) because, "The OPLA sets forth those products liability claims which may be made against a manufacturer and none of the statutorily recognized claims includes an implied warranty claim." *Stratford*, 2008 WL 2491965, at *7; *Luthman v. Minster Supply Co.*, 2008 Ohio 165 (Ct. App. 2008) ("The OPLA has preempted the implied warranty of merchantability of the implied warrant of fitness for a particular purpose."). As for her claims in fraud and negligent misrepresentation, they are essentially premised on a failure to warn. The complaint alleges that, "Defendants had an absolute duty to disclose true facts known to them regarding the safety of their products, Pondimin and/or Redux, and the combined use of theses diet

pills with Phentermine." (Compl. ¶210 (Count V) and ¶219 (Count VI)). This theory can only be pursued pursuant to the OPLA – not under common law theories of fraud or misrepresentation.

Jason Anderson's claim for loss of consortium is purely derivative of his wife's claims and so falls along with hers. The parties have not briefed whether the OPLA permits assertion of a loss of consortium claim, so that issue is not addressed here.

Finally, the Defendants move to strike the Plaintiffs' punitive damages demand. Obviously, since the complaint is being dismissed, the punitive damages demand is automatically dismissed along with it. Presumably what Defendants want – since I am granting leave to amend to assert any claims pursuant to the OPLA – is to preclude punitive damages from being repleaded, on the ground that it would be futile.

Under New York law, *lex locus delecti* – the place of the tort – applies to a claim for punitive damages. *In re September 11th Litigation*, 494 F. Supp. 2d 232, 239 (S.D.N.Y. 2007). As we have seen, under New York law, when the tort involves the ingestion of a dangerous drug, the *lex locus delecti* is the place where the drug was taken – Ohio. *See supra.*, at 4. Under Ohio law, punitive damages are not recoverable in pharmaceutical product liability actions unless the FDA has made an express finding of fraud by the defendant in connection with the marketing of the drugs at issue. *Monroe v. Novartis Pharms. Corp.*, 29 F.Supp. 3d 1115, 1130 (S.D. Ohio 2014). The complaint that I have just dismissed pleads no such finding.

Because this is the law of the state of Ohio, I agree with Defendants that if the Plaintiff cannot affirmatively plead that the FDA had made an express finding of fraud in connection with Wyeth's marketing of Fenfluramine, it would be futile to seek relief in the form of punitive damages.[3] But I do not know whether the FDA made such a finding (although I accept that it

---

[3] Punitive damages is a form of relief; it is technically not a "claim" at all; it is, rather, an aspect of damages that either is or is not available under relevant law.

probably did not). I assume that, when they file their amended complaint, the Plaintiffs will either plead the requisite FDA finding or refrain from repleading their request for relief in the form of punitive damages.

## Conclusion

For the reasons explained above, the complaint is DISMISSED without prejudice and with leave to amend in order to replead Counts I, III, IV, V and VI (the latter two being predicated on failure to warn) pursuant to the relevant sections of the Ohio Products Liability Act. Count II is DISMISSED with prejudice and without leave to amend. Count VII is DISMISSED without prejudice, but leave to amend in order to replead is granted only if Ohio recognizes a loss of consortium claim in connection with claims asserted under the OPLA – an issue that was not briefed by the parties on the present motion.

Because the complaint has been dismissed in its entirety, the motion to strike the prayer for punitive damages is DENIED AS MOOT. However, the prayer for punitive damages may be included in a new complaint only if Ohio law allows it – which is to say, if the Plaintiffs can plead that the FDA made a finding of fraud by the manufacturer.

This constitutes the decision and order of the court. It is a written decision. The Clerk is directed to remove the motion at Docket # 28 from the court's list of open motions.

Dated: October 22, 2025

_____
U.S.D.J.

BY ECF TO ALL COUNSEL